TEZ Law Firm, A Professional Corporation
JJ ZHANG, ESQ. (SBN 326666)
Email: jj@tezlawfirm.com
4141 S Nogales Street C102
West Covina, CA 91792
Telephone No.: (626) 678-8677
Facsimile No.: (909) 598-1788
Attorney for Petitioner-Plaintiff
ENJIA CUI (A# 236-984-032)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ENJIA CUI,<br>Petitioner-Plaintiff,<br>vs.<br><br>**MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security, in his official capacity;<br><br>**DAVID J. VENTURELLA,** Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement, in his official capacity;<br><br>**ERNESTO SANTACRUZ,** Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement, in his official capacity;<br><br>**WARDEN/OFFICER IN CHARGE,** Adelanto ICE Processing Center, in his/her official capacity;<br><br>**TODD BLANCHE,** Attorney General of the United States, in his official capacity,<br><br>Respondents-Defendants. | Case No.: ____________________<br><br>PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. §§ 1225, 1226; 5 U.S.C. § 706; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Petitioner Detained At:<br>Adelanto ICE Processing Center<br>10250 Rancho Road, Adelanto, CA 92301<br>(San Bernardino County)<br><br>A# 236-984-032 |

## I. INTRODUCTION

1. Petitioner Enjia Cui is a Chinese national who entered the United States on a B-1/B-2 visitor visa after inspection and admission by U.S. Customs and Border Protection at San Francisco, California, on

February 4, 2026. Well within the one-year period required by 8 U.S.C. § 1158(a)(2)(B), and as her authorized stay was expiring, she filed Form I-589 on August 3-4, 2026, seeking asylum, withholding of removal, and Convention Against Torture protection based on alleged persecution by Chinese police for practicing Christianity in an unregistered house church. USCIS scheduled biometrics for August 24, 2026 and an asylum interview for August 28, 2026.

2. Petitioner did exactly what USCIS's notices instructed her to do. She appeared on time at the USCIS Application Support Center in El Monte, California for biometrics. While she was checking in, ICE officers arrested her and took her into custody. Her resulting detention prevented her from attending the asylum interview scheduled for August 28, 2026. Thus, government custody was not a voluntary failure to appear that prevented Petitioner from completing the scheduled affirmative-asylum process.

3. Petitioner has no criminal history. She was inspected and admitted on a B-1/B-2 visa and therefore is not an "applicant for admission" within the meaning of 8 U.S.C. §§ 1101(a)(13)(A) and 1225(b), even though her period of authorized stay expired on August 3, 2026. She has a fixed address and complied with USCIS's biometrics instructions. Since her arrest on August 24, 2026, Petitioner has been held at the Adelanto ICE Processing Center. Respondents have served her with a Notice to Appear which expressly charges her only under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining beyond her authorized stay, and checks the box confirming she "ha[s] been admitted to the United States" but that is the only document Respondents have served on Petitioner; she has not been served with an initial custody determination on Form I-286 or any other custody document, and has not had a bond redetermination hearing before an immigration judge.

4. Petitioner's detention pending removal proceedings is governed by 8 U.S.C. § 1226(a), not § 1225(b) or § 1226(c). Section 1226(a) permits release on bond or conditional parole. The implementing regulations contemplate an initial DHS custody determination and permit a detainee to request redetermination before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), (g), 1003.19. Although § 236.1(g) states that an immigration official may issue Form I-286, Petitioner alleges more than the absence of a particular form: Respondents have disclosed no operative custody determination or custody basis and have not afforded meaningful access to the regulatory redetermination process. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), addresses noncitizens who entered without inspection and are therefore deemed applicants for admission under 8 U.S.C. § 1225(a)(1), detained under § 1225(b)(2)(A); it does not govern a person like Petitioner who was inspected and admitted.

5. The primary relief Petitioner seeks is immediate release under reasonable conditions. Respondents used a mandatory USCIS compliance appointment as the occasion to arrest a person who

appeared exactly as directed, had no criminal history, maintained a fixed residence, and had timely invoked the affirmative-asylum process before her arrest. They then continued her confinement without disclosing any individualized custody rationale or providing a meaningful opportunity to contest it. On this record, release from unlawful physical custody, the traditional function of habeas corpus, see *Preiser v. Rodriguez*, 411 U.S. 475, 484-85 (1973) is the relief the equities and the undisputed facts support. In the alternative, Petitioner requests a declaration that her custody is governed by § 1226(a), not § 1225(b), and prompt, unobstructed access to immigration-judge redetermination under 8 C.F.R. § 1003.19. Petitioner also challenges any custody determination that exists, or Respondents' failure to make one, as arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A).

## II. JURISDICTION

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241(c)(3), which authorizes habeas relief for a person held in custody in violation of the Constitution or laws or treaties of the United States, and under 28 U.S.C. § 1331. Federal courts retain habeas jurisdiction over a constitutional challenge to immigration detention. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Boumediene v. Bush*, 553 U.S. 723, 745 (2008).

7. Petitioner challenges the legal basis and process for her present physical detention, not the merits of a removal charge or a request that this Court select a discretionary bond amount. Section 1226(e) does not foreclose review of constitutional claims or questions of law concerning the governing detention framework. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018); *Martinez v. Clark*, 124 F.4th 775, 779-85 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Section 1331 also supplies jurisdiction over the alternative APA claim under 5 U.S.C. §§ 704 and 706.

## III. VENUE AND CUSTODY

8. This Court has jurisdiction over Petitioner's immediate custodian because Petitioner is physically confined at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, within this District. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 442-43 (2004) (habeas petition must be filed in the district of confinement, against the immediate custodian).

9. Venue is proper in the Eastern Division of the Central District of California under 28 U.S.C. § 1391(e) and this Court's own division-assignment rules for cases arising from custody at Adelanto. Venue and custodial jurisdiction are separate inquiries; Petitioner cites § 1391(e) for venue only, and *Rumsfeld v. Padilla* and 28 U.S.C. § 2241(a) for jurisdiction over the immediate custodian.

## IV. REQUIREMENTS OF 28 U.S.C. §§ 2241 AND 2243

10. Section 2243 directs a court receiving a habeas application to act on it forthwith and sets the time for a return. 28 U.S.C. § 2243. The Court should therefore require a prompt return identifying the legal and factual basis for Petitioner's present custody.

## V. PARTIES

11. Petitioner Enjia Cui (A# 236-984-032) is a native and citizen of the People's Republic of China, born August 8, 1974 in Tonghua City, Jilin Province. She was lawfully admitted to the United States on a B-1/B-2 visitor visa on February 4, 2026, and resided, prior to her arrest, at 7505 Whitmore Street, Apartment 112, Rosemead, California. She is currently detained at the Adelanto ICE Processing Center in Adelanto, California.

12. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity. He is responsible for the administration and enforcement of the immigration laws, including the detention of noncitizens such as Petitioner.

13. Respondent David J. Venturella is the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

14. Respondent Ernesto Santacruz is the Los Angeles Field Office Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity. He has direct supervisory authority over the ICE officers who arrested Petitioner on August 24, 2026 at the USCIS El Monte Application Support Center and who continue to hold her in custody.

15. Respondent Warden/Officer in Charge of the Adelanto ICE Processing Center is Petitioner's immediate custodian and is sued in his/her official capacity. Petitioner's counsel will confirm and, if necessary, substitute the specific named custodian promptly.

16. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity.

## VI. LEGAL FRAMEWORK

*A. Petitioner Was Lawfully Admitted and Is Detained Under 8 U.S.C. § 1226(a), Not § 1225(b); Matter of Yajure Hurtado Does Not Apply to Her.*

17. Section 1225(b) governs applicants for admission. Under 8 U.S.C. § 1101(a)(13)(A), admission means the lawful entry of a noncitizen after inspection and authorization by an immigration officer. Petitioner alleges that CBP inspected and admitted her on February 4, 2026. Expiration of her authorized stay may render her removable under 8 U.S.C. § 1227(a)(1)(B) and Petitioner's own Notice to Appear charges her under exactly that provision, expressly checking the box confirming she "ha[s] been admitted to the United States", but it does not undo the historical fact of admission or transform her into an

applicant for admission under § 1225(b). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) which by its terms addresses noncitizens who entered without inspection and are deemed applicants for admission under 8 U.S.C. § 1225(a)(1). Therefore, does not control her custody classification. Petitioner's position is more straightforward still: she is not merely a noncitizen arrested in the interior years after an unlawful entry, as in *Rodriguez Vazquez*, but a person who was actually inspected, authorized to enter, and formally admitted, so the § 1225(a)(1) deeming provision does not apply to her at all.

18. Section 1226(a) authorizes arrest and detention pending a decision whether a noncitizen is to be removed and permits release on bond or conditional parole. Petitioner alleges no conviction, terrorism-related ground, or other basis for mandatory detention under § 1226(c). On the facts presently known, § 1226(a) supplies the governing detention authority. This tracks the line the Ninth Circuit recently confirmed governs which detention regime applies: a noncitizen apprehended in the interior of the United States, rather than at the border or a port of entry, is subject to § 1226, not the mandatory-detention regime of § 1225(b)(2)(A), which the government reserves for applicants for admission. *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 9-10, 14-19 (9th Cir. July 30, 2026). Petitioner was arrested months after her admission, at a domestic USCIS facility she attended in the ordinary course of her own asylum case.

19. The regulations contemplate an initial DHS custody determination and authorize a detainee, before a final removal order, to request amelioration of custody conditions from an immigration judge. 8 C.F.R. §§ 236.1(d)(1), (g), 1003.19. At a § 1226(a) bond redetermination, Petitioner may present the factors identified in *Matter of Guerra*: a fixed address, length of residence, family ties, employment history, record of appearance in court, criminal record, history of immigration violations, any attempt to flee prosecution or escape authorities, and manner of entry. 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner alleges that Respondents have not disclosed an operative custody determination or custody basis and have not given her meaningful access to an immigration-judge redetermination.

*B. Due Process Requires Notice and Meaningful Access to the Available Custody-Review Process.*

20. The Fifth Amendment protects every person within the United States from deprivation of liberty without due process, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Petitioner's detention began only days before this filing, so she does not contend that its duration alone is already unconstitutionally prolonged, and she does not rest on the mere existence of discretionary detention authority as adequate process in itself. Her claim is that Respondents used her compliance with a mandatory USCIS appointment as the occasion for arrest and have since continued her confinement

without disclosing an individualized custody rationale or affording a meaningful opportunity to contest it. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

21. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-23 (9th Cir. 2022), holds that due process did not require a second § 1226(a) hearing with the burden shifted to the government on the facts there. This Petition therefore does not claim an automatic entitlement, after roughly one week of custody, to a government-burden clear-and-convincing-evidence hearing. It seeks enforcement of the initial custody and redetermination framework in 8 C.F.R. §§ 236.1 and 1003.19, and habeas relief if Respondents cannot establish lawful custody or continue to deny meaningful access to that framework.

22. The private interest at stake is physical liberty and it is fundamental, and the public interest points the same direction. *Mathews v. Eldridge*, 424 U.S. at 335. The government's ability to secure voluntary compliance with USCIS and immigration-court process depends on people being able to rely on the government's own notices without fear that compliance itself will become the occasion for an unexplained arrest. Due process for this purpose does not depend on immigration status: it protects every person within the United States, including a noncitizen without lawful status. *Plyler v. Doe*, 457 U.S. 202, 214 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."). Nor does it diminish for a person facing even the most serious charge. Petitioner, who has committed no crime and did nothing but comply with the government's own instructions, is entitled to no less.

*C. The Circumstances of Arrest Confirm Petitioner's Compliance and Low Flight Risk.*

23. USCIS regulations require an asylum applicant to appear for biometrics and an interview and address the consequences of a failure to appear. 8 C.F.R. §§ 208.9, 208.10. Section 208.10 expressly excuses a failure caused by exceptional circumstances. Petitioner appeared for biometrics as instructed, and ICE custody prevented attendance at the interview scheduled for August 28, 2026. These circumstances establish that the missed interview was not voluntary and are also relevant to flight risk, compliance, and the equities of release.

24. Petitioner's pending asylum application did not itself extend her B-1/B-2 status or eliminate removability after her authorized stay expired. Petitioner therefore does not allege that the mere filing of Form I-589 made her arrest categorically unauthorized. She alleges instead that her voluntary appearance at a government appointment, fixed residence, absence of criminal history, and a Form I-589 filed well within the one-year statutory window strongly rebut any suggestion that detention is needed to secure her appearance.

25. Petitioner has not been provided the arrest warrant, if any, the Form I-286 custody notice, or an individualized explanation of why detention rather than release conditions are necessary. Those records are within Respondents' control and should be produced with the return. If Respondents contend the arrest was warrantless under 8 U.S.C. § 1357(a)(2), they should identify the facts supporting both statutory predicates: reason to believe Petitioner was violating immigration law, and likelihood that she would escape before a warrant could be obtained.

*D. On These Undisputed Facts, Petitioner's Immediate Release Is the Appropriate Remedy.*

26. Petitioner does not merely seek process; the undisputed facts warrant her immediate release. Each factor *Matter of Guerra* identifies as bearing on custody favors her: a fixed address, no criminal record, no history of immigration violations, no attempt to flee prosecution or escape authorities, and a manner of entry and record of appearance that reflect full cooperation, not evasion. 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's overstay is not disputed, but an overstay alone does not authorize open-ended detention without process: Petitioner was already in the ordinary course of the affirmative asylum process the government itself provides, having filed her Form I-589 well within the one-year statutory window and while awaiting adjudication under established USCIS procedures. Nothing about her case is exceptional except Respondents' conduct in arresting her at a mandatory government appointment.

27. Petitioner received no advance notice or warning that appearing for her scheduled biometrics appointment could result in her arrest; to the contrary, USCIS's own notice affirmatively directed her to appear, on pain of jeopardizing her pending asylum application if she did not. Respondents have disclosed no individualized determination, made before or after that arrest, that Petitioner's continued detention rather than release under reasonable conditions is necessary. If the government may summon a person to a mandatory appointment and then arrest her upon compliance, without any disclosed individualized basis and without affording her a subsequent opportunity to contest that basis, individuals have every incentive to stop appearing for USCIS and immigration-court process altogether, which is an outcome that serves neither orderly enforcement nor the public interest in the rule of law. On this record, immediate release under reasonable conditions, not further delay, is the remedy due process requires.

## VII. EXHAUSTION

28. Statutory exhaustion is not a prerequisite to a § 2241 challenge to present physical custody. Any exhaustion requirement is prudential. *Laing v. Ashcroft*, 370 F.3d 994, 997-1001 (9th Cir. 2004). Petitioner does not allege that the § 1003.19 redetermination process is closed to her; 8 C.F.R. § 1003.19(b) permits a detainee to request that process orally or in writing, without a Form I-286 as a prerequisite. Petitioner alleges instead that, as of this filing, no custody determination or bond hearing of

any kind has yet occurred, and that she has not received the initial custody notice Respondents' own regulations contemplate. Excusing exhaustion here rests on the recognized grounds this Circuit has applied in the prudential-exhaustion context: the ongoing physical detention presents irreparable injury that further delay would only compound; whether Petitioner falls under § 1226(a) or § 1225(b) is a pure legal question this Court, not an Immigration Judge, is positioned to resolve; an Immigration Judge lacks authority to adjudicate Petitioner's Administrative Procedure Act claim or to remedy the custody she has already served without any determination; and requiring completion of the redetermination process first would not develop any fact material to that legal classification question. *Laing*, 370 F.3d at 1000-01.

29. Petitioner's counsel is concurrently requesting an immigration-judge bond redetermination under 8 C.F.R. § 1003.19 in advance of the master calendar hearing presently scheduled for September 8, 2026, at the Adelanto Immigration Court, and will pursue that process promptly. This Petition seeks narrow relief ensuring that Respondents identify the statutory basis for custody, serve any operative custody determination, and do not impede Petitioner's access to the regulatory hearing process now underway. If an immigration judge promptly conducts a redetermination, the parties can advise the Court whether any claim has become moot or requires amendment; Petitioner recognizes the Court may in its discretion await the outcome of that hearing before resolving the release request.

## VIII. STATEMENT OF FACTS

A. Background, Lawful Admission, and Compliance History.

30. Petitioner Enjia Cui was born August 8, 1974, in Tonghua City, Jilin Province, People's Republic of China, and is a member of China's ethnic Korean minority. She holds an associate degree from Changchun Normal University and worked for many years as a Korea-business representative and, most recently, as legal representative for an industrial company in Kunming, Yunnan Province.

31. On November 21, 2019, the U.S. Consulate in Chengdu issued Petitioner a B-1/B-2 visitor visa, valid to November 18, 2029. Petitioner arrived in the United States at San Francisco, California, on February 4, 2026, where she was inspected and lawfully admitted by U.S. Customs and Border Protection (I-94 Record No. 927913627A4), authorized to remain until August 3, 2026. Since her admission, and prior to her arrest, Petitioner resided at 7505 Whitmore Street, Apartment 112, Rosemead, California. Petitioner has no criminal history of any kind, in the United States or elsewhere, and has never before been placed in immigration proceedings anywhere.

B. Petitioner's Asylum Claim.

32. Since approximately 2010, Petitioner attended an unregistered, Korean-founded Christian house church in Kunming's Guandu District. On December 23, 2025, local officials verbally informed the

congregation that Christmas celebrations and related religious observances would not be permitted. Petitioner, distressed by this restriction on her faith, posted messages in a WeChat group criticizing the Chinese Communist Party's ban on Christmas and its broader treatment of religion and dissent.

33. On January 25, 2026, at approximately 11:00 a.m., three police vehicles carrying six officers arrived at the church, forcibly took the congregants into custody, searched and confiscated the church's property, shut the church down, and recorded the identities of its members. Petitioner was held at a police station for approximately thirteen hours, without food or water, was forced to watch government propaganda and to write a written reflection, and was coerced into signing a statement promising never again to participate in unregistered religious activity, on pain of criminal prosecution. She was warned that she would be required to report to the police whenever summoned. Fearing further persecution, Petitioner departed China on February 3, 2026, and arrived in the United States the following day.

34. On August 3-4, 2026, well within the one-year period following her February 4, 2026 arrival, as required by 8 U.S.C. § 1158(a)(2)(B). Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal with the USCIS Los Angeles Asylum Office, seeking asylum, withholding of removal, and protection under the Convention Against Torture based on her religion. USCIS acknowledged receipt (Receipt No. MGL2677248616) and, by notice dated August 8, 2026, scheduled Petitioner's asylum interview for August 28, 2026, and, separately, scheduled Petitioner to appear for biometrics (fingerprinting) at the USCIS El Monte Application Support Center on August 24, 2026, at 3:00 p.m., an appointment Petitioner was required to attend under penalty of having her asylum application deemed abandoned or referred to an Immigration Judge for failure to appear.

C. Petitioner's Arrest at Her Mandatory Biometrics Appointment.

35. On August 24, 2026, Petitioner timely appeared, as instructed, at the USCIS El Monte Application Support Center for her 3:00 p.m. biometrics appointment. While checking in for that appointment, Petitioner was arrested and taken into custody by ICE. At the time of her arrest, no Notice to Appear or other charging document had yet been served on her. Because of that arrest and her resulting detention, Petitioner did not appear and could not appear for her asylum interview scheduled for August 28, 2026. Respondents' own conduct in arresting Petitioner at the biometrics appointment directly caused her to miss the interview that would have adjudicated the merits of her asylum claim.

36. Only after taking Petitioner into custody did DHS issue a Notice to Appear, dated and served August 24, 2026, charging Petitioner solely with remaining in the United States beyond her authorized period of stay, in violation of INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). The Notice to Appear expressly checks the box confirming that Petitioner "ha[s] been admitted to the United States," and does

not charge her under any inadmissibility ground or as an arriving alien. A master calendar hearing has been scheduled before an Immigration Judge at the Adelanto Immigration Court for September 8, 2026, at 8:30 a.m.

D. Current Custody.

37. Petitioner is currently detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. Respondents have served Petitioner with a Notice to Appear; as of filing, that is the only document Respondents have served on her. Petitioner has not been served with a Form I-286 or any other initial custody determination and has not had an immigration-judge bond redetermination. She has no criminal history, a fixed address, and a record of appearing as directed by USCIS.

## IX. CLAIMS FOR RELIEF

### COUNT I

### Detention Under § 1226(a) Without Disclosure of the Custody Basis or Meaningful Access to Redetermination

### (28 U.S.C. § 2241; 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1, 1003.19)

38. Petitioner incorporates by reference all preceding paragraphs.

39. Petitioner was inspected and admitted and is not detained under § 1225(b). No alleged fact places her within § 1226(c). Her custody therefore arises under § 1226(a). Respondents have not disclosed the operative custody determination or basis for continued detention and have not afforded meaningful access to an immigration-judge redetermination under 8 C.F.R. § 1003.19. The Court should require Respondents to identify and produce the operative custody records, afford meaningful access to the available redetermination process, and release Petitioner under reasonable conditions if Respondents cannot establish lawful custody or continue to withhold that access.

### COUNT II

### Fifth Amendment Due Process (Lack of Notice and Meaningful Access to Custody Review)

### (U.S. Const. amend. V)

40. Petitioner incorporates by reference all preceding paragraphs.

41. Petitioner does not claim that roughly one week of detention is prolonged detention or that *Rodriguez Diaz* requires the government to bear the burden at an ordinary § 1226(a) redetermination. She claims that detention without notice of the operative custody decision and without meaningful access to the available redetermination procedure creates an unreasonable risk of erroneous deprivation of liberty. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Given the extent of that risk here, an arrest with no individualized basis ever disclosed, following full compliance with a government-mandated appointment, and no criminal history or other basis suggesting Petitioner is a flight risk or danger and the combination of that risk, Petitioner's misclassification under § 1226(a), and the undisputed equities warrants Petitioner's immediate release under reasonable conditions as the appropriate remedy, release from

unlawful physical custody being the traditional office of the writ, see *Preiser v. Rodriguez*, 411 U.S. 475, 484-85 (1973), or, in the alternative, prompt disclosure of the custody determination and meaningful access to redetermination.

**COUNT III**
**Agency Action Arbitrary, Capricious, and Not in Accordance with Law (Continued Detention Without a Reasoned Custody Determination)**
**(5 U.S.C. §§ 701-706)**

42. Petitioner incorporates by reference all preceding paragraphs.

43. This claim does not challenge Respondents' initial decision to arrest Petitioner, a discretionary law-enforcement judgment, or any discretionary bond amount; it challenges Respondents' failure to make, or unreasoned refusal to make, any individualized custody determination since that arrest, a question governed by ascertainable standards, not unreviewable enforcement discretion. Section 701(a)(2) of Title 5 precludes review only where "there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)). Here, the agency's own regulations supply that law: 8 C.F.R. § 236.1(d)(1) expressly structures immigration-judge review around an antecedent DHS custody determination, it does not contemplate detention without any identifiable custody decision or meaningful opportunity to obtain redetermination, and *Matter of Guerra*, 24 I. & N. Dec. at 40, identifies the factors (fixed address, length of residence, family ties, employment history, record of appearance in court, criminal record, history of immigration violations, any attempt to flee prosecution or escape authorities, and manner of entry) that inform it. Although § 236.1(d)(1) does not prescribe a particular form or require a written explanation in every case, that structure supplies law to apply to the antecedent question this Count raises: whether any identifiable custody decision was made or disclosed at all. Nor does 8 U.S.C. § 1226(e) bar this claim: it forecloses review of a discretionary custody outcome or bond amount, not review of whether Respondents made any reasoned determination at all. *Jennings v. Rodriguez*, 583 U.S. at 295; *Martinez v. Clark*, 124 F.4th at 779-85.

44. Respondents' continuing decision to detain rather than release Petitioner under § 1226(a) should be treated as final agency action reviewable under 5 U.S.C. § 704: applying the two-part test of *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), it marks the consummation of Respondents' decision making on whether to release or continue to detain her, and it determines her rights and imposes a concrete legal consequence with continued physical confinement. That an Immigration Judge may later conduct a bond redetermination does not defeat that finality as to Respondents' own decision: the redetermination is a separate proceeding in a different forum, not a further stage of Respondents' own decision making process, so Respondents' custody decision remains complete and operative in the interim regardless of what relief the Immigration Judge may later order.

45. To the extent Respondents have made a determination that Petitioner should remain in custody rather than be released under § 1226(a), that determination is arbitrary and capricious under 5 U.S.C. § 706(2)(A): it has not been disclosed to Petitioner and is inconsistent with a record showing no criminal history, a fixed address, full compliance with every USCIS instruction to date, and voluntary appearance at the very appointment at which she was arrested. See *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem" or offered "an explanation for its decision that runs counter to the evidence before the agency"); *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (agency policy must rest on a reasoned basis tied to the statutory scheme, not an arbitrary distinction).

46. Independently, Respondents' own course of conduct is internally inconsistent in a way that itself demonstrates a lack of reasoned decision making. USCIS directed Petitioner to appear for biometrics and warned that failure to do so could result in her asylum application being deemed abandoned or referred to an Immigration Judge. Petitioner complied. Respondents then used that compelled appearance as the occasion for an unannounced arrest, and Petitioner's resulting detention directly caused her to miss the asylum interview USCIS itself had scheduled four days later. Respondents have offered no explanation reconciling a process that compels attendance to advance an asylum application with an enforcement practice that uses that same compelled attendance to arrest the applicant and defeat the very interview her attendance was meant to preserve, nor have they addressed the predictable consequence that such practices discourage compliance with USCIS and immigration-court notices generally. An agency need not catalog every discretionary factor in a given case, but reasoned decision making requires it to reckon with its own contradictory conduct and that conduct's foreseeable effects. See *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009) (explaining, in the context of an agency's change in position, the APA's requirement of acknowledged and reasoned decision making); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23-26 (2020) (reasoned decision making requires an agency to consider important reliance interests generated by its own affirmative procedures and representations before acting in a way that defeats them).

47. In the alternative, to the extent no custody determination has ever been made, Respondents' continued detention of Petitioner without ever conducting the individualized assessment the statutory and regulatory scheme is built around is itself arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A). The Court should set aside any such undisclosed or unreasoned determination and order Petitioner's immediate release under reasonable conditions, or, in the alternative, order Respondents promptly to make and disclose one.

## X. PRAYER FOR RELIEF

1. Assume jurisdiction over this Petition;

2. Order Petitioner's immediate release under reasonable conditions, given the undisputed absence of any individualized determination that her continued detention is necessary and the undisputed facts establishing that she poses no flight risk or danger;

3. In the alternative, order Respondents to show cause and file a prompt return under 28 U.S.C. § 2243, including the Notice to Appear, any Form I-200 warrant, any Form I-286 custody determination, and records identifying the statutory basis for custody;

4. Declare that Petitioner's present detention is governed by 8 U.S.C. § 1226(a), not § 1225(b), on the facts alleged;

5. Hold unlawful and set aside, as arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A), any determination, disclosed or undisclosed, that Petitioner should remain in custody;

6. In the alternative, order Respondents promptly to disclose the operative custody determination and statutory basis for detention and afford Petitioner meaningful access to request an immigration-judge bond redetermination under 8 C.F.R. § 1003.19, and, if Respondents cannot establish lawful authority for custody or fail to provide that process, issue a writ directing release under reasonable conditions;

7. Retain jurisdiction long enough to ensure compliance and permit the parties to report the result of any bond redetermination;

8. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if she qualifies as a prevailing party;

9. Grant such other and further relief as the Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

TEZ LAW FIRM, A Professional Corporation

By: JJ Zhang
ID HwPjzYGo21gv8N872zUzNTq3

JJ Zhang, Esq. (SBN 326666)

Attorney for Petitioner-Plaintiff Enjia Cui